**STATE EMPLOYEES' RETIREMENT SYSTEM, Petitioner**

v.

**OFFICE OF OPEN RECORDS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 13, 2010.
Decided Nov. 4, 2010.

dant's policy limits. Thus, the verdict would control for the calculation of delay damages.

M. Catherine Nolan, Harrisburg, for petitioner.

Nathanael J. Byerly, Harrisburg, for respondent.

Emily J. Leader, Deputy Chief Counsel, Mechanicsburg, for amicus curiae, PA School Boards Association.

Teri Henning, Harrisburg, for amicus curiae, PA Newspaper Association.

Mark L. Tamburri, Pittsburgh, for intervenors, PG Publishing Company and Tracie Mauriello.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The State Employees' Retirement System (SERS) petitions for review from a decision of the Office of Open Records (OOR) which granted the appeal of Tracie Mauriello and the Pittsburgh Post–Gazette (collectively, Requestors) and ordered SERS to furnish the requested information to Requestors at a rate of $0.25 per page within thirty days, pursuant to the Right to Know Law (RTKL).[1] We affirm.

On November 19, 2009, Requestors submitted a RTKL request to SERS seeking the years of service, class of service and total compensation for the last three years of service for the employees' they had listed. The Requestors asked that they be notified if the cost to fulfill the request would exceed $50.00.

On November 20, 2009, via telephone, SERS advised the Requestors that the cost to fulfill the Request would be $77.00. The Requestors asked that SERS take no further action to provide the information. The Requestors then asked SERS to reconsider its position on the fee and if it would not, to prepare a formal response so that Requestors could file an appeal.

On November 30, 2009, Robert Gentzel, Agency Open Records Officer for SERS, sent Requestors a letter advising that SERS was prepared to fulfill the request without requiring pre-payment, but stated that they would send a bill with the response. SERS advised that its policy is to charge a fee for:

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104, effective January 1, 2009. The new RTKL repealed the former Right–to– Know Law, Act of June 21, 1957, P.L. 390, *as amended, formerly* 65 P.S. §§ 66.1–66.4.

costs necessarily incurred in responding to RTKL requests as permitted by the RTKL. *See* 65 P.S. § 67.1307(g).[2] The State Employees' Retirement Board's Right–to–Know Law Policy states that applicable fees shall be determined by the Open–Records Officer on a case-by-case basis. Fees are based upon the applicable cost to SERS and include, "Employee time for compiling and printing requested records (based on hourly wage and benefits)" and "Employee time for compiling electronic disk of requested records (based on wage and benefits)." *Commonwealth of Pennsylvania State Employees' Retirement System Board Second Amended and Restated Right-to-Know Law Policy,* Section X. Fees, (G) and (H). SERS does not charge for time spent to determine whether a record is a "public record."

SERS Response to Requestors, November 30, 2009, at 1–2.[3]

On December 9, 2009, Requestors timely appealed to the OOR, challenging the fees charged. On December 22, 2009, SERS responded that it had necessarily incurred costs and was required to charge for those costs pursuant to the State Employees' Retirement Code, 71 Pa.C.S. §§ 5101–5956 (Retirement Code), as not charging a labor fee would violate its fiduciary responsibility to operate the Fund for the exclusive benefit of its members, and Section 401 of the Internal Revenue Code, 26 U.S.C. § 401(IRC), as failure to operate for the exclusive benefit of its members could jeopardize SERS' qualification and the fa-

vorable tax treatment afforded its members. SERS further stated that Requestors were aware of and had paid all fees that SERS had charged in the past for costs incurred in complying with other requests submitted.

The OOR determined that:

[C]harging for the time it takes an agency employee to respond to a request during normal business hours is not a proper charge to pass along to a requester. SERS is statutorily required to provide public records in response to a RTKL request. Arguing that doing so without recouping the cost jeopardizes SERS' qualification, and consequently, the favorable tax treatment afforded its members in essence is arguing that SERS is not required to comply with a statutory mandate. The RTKL is clear that an agency cannot charge a fee except for those expressly stated. Employee time spent during their regular day in the course of their duties to provide records in response to RTKL requests when directed to do so is not a necessarily incurred cost but rather a routine expense for complying with RTKL mandates.

If, in fact, SERS compiled records in a manner it is not required to by section 705, it is not reasonable for SERS to pass that expense on to the Requester. An agency cannot circumvent the fee restriction by unilaterally creating a record from existing records and then charging more than the fee per page

---

**2.** Section 1307(g) of the RTKL, 65 P.S. § 67.1307(g) provides as follows:

(g) LIMITATIONS.—Except as otherwise provided by statute, no other fees may be imposed unless the agency necessarily incurs costs for complying with the request, and such fees must be reasonable. No fee may be imposed for an agency's review of a record to determine whether the record is a

public record, legislative record or financial record subject to access in accordance with this act.

**3.** We note the *Commonwealth of Pennsylvania State Employees' Retirement System Board Second Amended and Restated Right–to–Know Law Policy* is SERS' own policy.

allowed under the RTKL. Therefore, printouts of the records containing the requested information must be provided at a rate of $0.25 per page.

OOR Final Determination, January 11, 2010, at 5–6. The OOR granted Requestors' appeal and required SERS to furnish the information within thirty days. SERS appealed to this court.[4]

SERS contends that Section 1307(g) of the RTKL permits SERS to charge a reasonable fee for labor costs it necessarily incurs for complying with the RTKL request and that the "exclusive benefit" rule, set forth in the IRC and the Retirement Code, require SERS to charge a reasonable fee for labor costs it necessarily incurs in complying with the RTKL requests.

■ Initially, SERS argues that the fee it was prepared to charge was for costs it "necessarily incurred" for the purpose of "complying with the request" and that the fee was reasonable. 65 P.S. § 67.1307(g). Section 1307 of the RTKL permits fees to be assessed for postage, duplication, certification of copies, conversion to paper, and enhanced electronic access to records. 65 P.S. § 67.1307(a)-(e). As stated previously, Section 1307(g) of the RTKL limits the imposition of fees to those provided for by statute and states that "no other fees may be imposed unless the agency necessarily incurs costs for complying with the request, and such fees must be reasonable." 65 P.S. § 67.1307(g).

SERS maintains that the fee it proposed to charge for the requested documents included costs it necessarily incurred in complying with Requestors' request. SERS states that the information Requestors requested did not come in a single document and that it does not maintain a single document with that data for any individual member or for any given year. SERS states that in complying with Requestors' request, it would be required to either compile pieces of data into a cohesive response or create hard copies of a number of individual screen prints, for which duplication and postage fees would be charged.

SERS further states that the work for which it was prepared to charge Requestors, was performed by two employees in the SERS' office of membership services whose usual duties entailed performing detailed research and auditing of member accounts. The duties required to fulfill Requestors' request were not something the employees would have preformed in the absence of such request. SERS sets forth that in producing a paper response it would require a separate sheet of paper for each requested item, which were years of service, class of service and total compensation for each of three years for each of the fourteen identified members of SERS. Some of the identified members have service credit in multiple membership classes, requiring an individual screen print and sheet of paper for each. Each page produced would have to be redacted manually and then photocopied to ensure

---

4. This court, in its appellate jurisdiction, independently reviews the OOR's orders regarding Commonwealth agencies. Not limited by the OOR's reasoning in the written decision subject to review, this court enters findings and conclusions, based on the evidence as a whole and explains its own rationale. *Bowling v. Office of Open Records*, 990 A.2d 813 (Pa.Cmwlth.2010). In *Prison Legal News v.*

*Office of Open Records*, 992 A.2d 942, 947 (Pa.Cmwlth.2010), this court advised that as to the standard of review, *Bowling* holds "that 65 P.S. § 67.1301(a) provided for an independent review of the evidence, not *de novo* review." Thus, this court, sitting in its appellate jurisdiction, functions as a trial court and may independently review the OOR's order.

effective and thorough redaction. The end product would be an estimated total of one hundred twenty pages, each containing a single piece of requested data and the remainder of the page showing only redacted screen fields.

SERS, instead, compiled the response into an Excel spreadsheet that could be printed in its entirety on a single 8½ × 11 page in full response to Requestors' request. The SERS employees extracted the requested pieces of data from the database electronically and compiled them in the spreadsheet, eliminating the need for manual redaction and photocopying. The end product is a single page spread sheet containing only the records that Requestors wanted and nothing else.

The first employee who performed this task worked for 1½ hours and the second employee for ½ hour. Both employees submitted time sheets.[5] As the descriptions suggest, the work performed was specific to Requestors' request and would not have been performed absent the request. In addition to the comparative sizes of the response formats, 120 pages verses 1 page, is the time needed to perform the necessary work. Both methods involve opening multiple database screens for each member. However, unlike the spreadsheet method that SERS used, the paper method would require the additional steps of printing, redacting and photocopying. The final response would also have to be scanned electronically for SERS' records.

Further, during the time the SERS' employees were performing this work, they could not perform other SERS functions. SERS states that it was not motivated by profit and had utilized the most efficient method of response, but that there was a cost incurred in complying with Requestors' request. SERS contends that complying with a RTKL request is both a "necessarily incurred cost" and a "routine expense." The cost was necessary in that no cohesive record response to Requestors' request existed and work to compile that response had to be performed. SERS compensated its employees for their work, thereby incurring a cost. It was also a routine expense in that SERS is subject to the RTKL and must invest the staff time necessary to comply with the RTKL requests. The General Assembly expressly prohibited labor fees for legal review of the record, but did not prohibit other labor fees that satisfy the requirements of Section 1307(g) of the RTKL.

SERS further sets forth Section X, G of the *Commonwealth of Pennsylvania State Employees' Retirement Board Second Amended and Restated Right–to–Know Law Policy* (Policy) which provides in pertinent part as follows:

X. Fees

The fees applicable to all RTKL Requests shall be determined by the Open–Records Officer.

- Charges for other services and materials will be determined on a case-by-case basis based upon the applicable cost to SERS. These include,

5. The first time sheet stated in pertinent part as follows:

Supply full year earnings for the last three years employment on the requested individuals in the Right To Know Request. Researched each individual's record: totaled full years earnings for the last three years of fulltime employment, calculated total service with a break down of different classes

if applicable. Since not all of these individuals are current employees of the Commonwealth, research obtained spanned the years 2004 through 2008.

The second time sheet stated in pertinent part as follows:

Verified that service and last three years of earnings that were supplied by Nancy Beyer were accurate.

but are not limited to, charges for the following:

\* \* \*

G) Employee time for compiling and printing requested records (based on hourly wage and benefits). . . .

The Policy has been in effect since the RTKL's January 1, 2009 effective date. SERS charged Requestors $77.00 based upon the first employee's hourly rate of $42.67 multiplied by 1.5 hours and the second employee's hourly rate of $26.28 multiplied by .5 hours. Requestors would have received the same data for $30.00, roughly 120 pages at $0.25 per page. However, it would have been in a less timely manner and in a cumbersome, much less convenient format.

The OOR determined that SERS had no statutory duty to create the data compilation. Section 705 of the RTKL provides that an agency "shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." 65 P.S. § 67.705; *see also, Moore v. Office of Open Records*, 992 A.2d 907, 909 (Pa. Cmwlth.2010)(the agency cannot be made to create a record which does not exist.) The OOR was correct in determining that SERS cannot charge for creating a record it was not required to create. Further, SERS' creation of such a record was not "necessarily" incurred, as it was not "necessary" for SERS to create such record.

■ Next, SERS contends that the "exclusive benefit" rule, set forth in the IRC and the Retirement Code, require SERS to charge a reasonable fee for labor costs it necessarily incurs in complying with the RTKL requests. The IRC and the Retirement Code are charged to operate for the "exclusive benefit" of its members. Such charge does not authorize a state agency to disregard a state statute. Our Supreme Court in *Pennsylvania State University v. State Employees' Retirement Board*, 594 Pa. 244, 256–257, 935 A.2d 530, 537 (2007), determined that even though SERS had "limited fiduciary duties," it was not exempt from complying with the RTKL. As stated previously, SERS failed to show that the labor costs were "necessarily incurred." Thus, as the RTKL does not expressly authorize the charging of labor costs, SERS is not permitted to charge a fee for such costs.

■ Lastly, SERS contends that the OOR exceeded its authority in establishing duplication fees and abused its discretion when it prohibited fees for search or retrieval and staff time or salary. Section 1307(b) of the RTKL states the following with regard to duplication fees:

Fee limitations.

\* \* \*

(b) Duplication.—

(1) Fees for duplication by photocopying, printing from electronic media or microfilm, copying onto electronic media, transmission by facsimile or other electronic means and other means of duplication shall be established:

(i) by the Office of Open Records, for Commonwealth agencies and local agencies;

(ii) by each judicial agency; and

(iii) by each legislative agency.

65 P.S. § 67.1307(b). Thus, the OOR may establish duplication fees for Commonwealth agencies and local agencies.[6] 65

---

**6.** SERS' assertion that OOR has an approval role is correct under Section 1307(e) regarding enhanced electronic access. However,

the issue in this matter involves Section 1307(g), which does not state that OOR has an approval role.

P.S. § 67.1307(b)(1)(i). The OOR did not err in determining such.

Accordingly, we must affirm the decision of the OOR.

## ORDER

AND NOW, this 4th day of November, 2010 the order of the Office of Open Records in the above-captioned matter is affirmed.