IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Southeastern Pennsylvania : 
Transportation Authority, : 
                       Petitioner : 
                                 : 
          v. : No. 1255 C.D. 2022
                                 : Submitted: May 5, 2023
Erik Steinheiser (Office of : 
Open Records), : 
                    Respondent : 

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                        FILED: January 5, 2024

The Southeastern Pennsylvania Transportation Authority (SEPTA) petitions for review of the October 13, 2022 final determination of the Office of Open Records (OOR). The OOR's final determination directed SEPTA to provide Erik Steinheiser (Steinheiser) with surveillance footage he requested, subject to redactions to protect the personal security of SEPTA personnel under Section 708(b)(1)(ii) of the Right-to-Know Law (Law), Act of February 14, 2008, P.L. 6, 65 P.S. § 67.708(b)(1)(ii). SEPTA argues the video should be exempt from disclosure in its entirety, and, in the alternative, Steinheiser should have to pay for the cost of redactions. After careful review, we vacate and remand.

# I. Background

On July 8, 2022, SEPTA Police responded to the West Trenton Regional Rail Line after receiving a report of "a male wearing body armor seated directly next to the train engineer's control stand." Reproduced Record (R.R.) at 18a. When police arrived, they identified the male as Steinheiser. *Id.* Additionally, the police learned Steinheiser was lawfully in possession of a loaded firearm. *Id.* Because the train engineer and conductors refused to transport Steinheiser, the police offered to drive him to his destination in a squad car. *Id.* Steinheiser was unwilling to relinquish his firearm while in the squad car, so the police instead placed him "on the next Regional Rail train in a car with a police escort." *Id.*

Steinheiser submitted a request for public records to SEPTA on July 10, 2022. He explained his request as follows:

> I am requesting video surveillance of all cameras on the West Trenton Line R3 for the 12:31 train scheduled to depart from Langhorne Station on Friday, July 8th 2022. This would be train number 6321 from the schedule. I am requesting all footage on all cameras on the train from Langhorne Station up to the end of the route. There was a police action incident at Somerton Station on this train that I also want full and complete footage included in this request.

R.R. at 1a.

SEPTA denied Steinheiser's request on August 17, 2022. SEPTA contended the video was exempt from disclosure under the personal security exception found at Section 708(b)(1)(ii) of the Law. R.R. at 4a. SEPTA reasoned releasing the video would create "a reasonable likelihood of a substantial and demonstrable risk to the security of the SEPTA Police Officers and SEPTA train engineers and conductor." *Id.*

Steinheiser appealed to the OOR. In defense of its decision, SEPTA submitted an affidavit from its Acting Chief of Police Charles Lawson (Chief Lawson). Chief Lawson averred releasing the video would endanger SEPTA personnel. R.R. at 18a-19a. He explained the video "depicts the train engineer and conductors who refused to transport" Steinheiser on July 8, 2022. *Id.* Based on Chief Lawson's training and experience in law enforcement, there was a risk Steinheiser "will be able to identify and find those SEPTA personnel" and then "potentially use his firearm against them and/or harass them via other means." *Id.* at 19a. Chief Lawson added that members of the public might "be able to identify and find those SEPTA personnel, and harass them."[1] *Id.*

The OOR issued a final determination on October 13, 2022, granting in part and denying in part Steinheiser's appeal. The OOR found Chief Lawson credible and concluded release of the video "would likely create a very real threat of physical harm to those SEPTA personnel." R.R. at 128a. Because SEPTA did not establish any threat to members of the public, however, and because the public would not have an expectation of privacy while riding public transportation, the OOR concluded the video was not exempt in its entirety. *Id.* The OOR directed that SEPTA could redact "faces or any other identifying information of SEPTA personnel" but must otherwise release the video. *Id.*

SEPTA filed a petition for review in this Court. SEPTA argues (1) the video is exempt from disclosure in its entirety because its release would pose a risk of harm to the public, (2) Steinheiser should pay the cost of SEPTA retaining a third-party vendor to redact the video, and (3) we may hold a hearing or remand to the OOR to

---

[1] SEPTA also submitted the SEPTA Police incident report from July 8, 2022, data showing arrests by SEPTA Police for alleged crimes involving guns, and a SEPTA policy prohibiting "threatening items" on SEPTA property. R.R. at 15a-16a, 21a-95a, 116a-17a.

develop the record on the reasonable cost of redaction and Steinheiser's willingness to pay.

## II. Discussion

When reviewing the OOR's final determination regarding public records, this Court is the ultimate fact-finder and conducts *de novo* review, meaning we owe the OOR no deference. *Am. C.L. Union of Pa. v. Pa. State Police*, 232 A.3d 654, 662-63 (Pa. 2020). We need not defer to the OOR, but we may adopt its findings of fact and legal conclusions when appropriate. *Id.* (quoting *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013)).

Records in possession of Commonwealth and local agencies are presumed to be public. *Pa. Pub. Util. Comm'n v. Friedman*, 293 A.3d 803, 814-15 (Pa. Cmwlth. 2023) (citing Section 305(a) of the Law, 65 P.S. § 67.305(a)). The burden rests on an agency to prove by a preponderance of the evidence that the Law's exceptions to disclosure apply.[2] *Cal. Univ. of Pa. v. Schackner*, 168 A.3d 413, 417 (Pa. Cmwlth. 2017) (citing *Brown v. Pa. Dep't of State*, 123 A.3d 801, 804 (Pa. Cmwlth. 2015)); *see* Section 708(a)(1) of the Law, 65 P.S. § 67.708(a)(1). We construe the exceptions narrowly, consistent with the Law's "goal of promoting government transparency and its remedial nature." *Cal. Borough v. Rothey*, 185 A.3d 456, 465 (Pa. Cmwlth. 2018) (quoting *Off. of Governor v. Davis*, 122 A.3d 1185, 1191 (Pa. Cmwlth. 2015) (*en banc*)).

As summarized above, SEPTA relies on the personal security exception found at Section 708(b)(1)(ii) of the Law. To meet its burden of proof under this exception,

---

[2] An agency meets its burden if it proves, "even by the smallest amount," that it is more likely than not the record is exempt from disclosure. *See Povacz v. Pa. Pub. Util. Comm'n*, 280 A.3d 975, 999 n.25 (Pa. 2022); *Del. Cnty. v. Schaefer ex. rel. Phila. Inquirer*, 45 A.3d 1149 (Pa. Cmwlth. 2012).

4

SEPTA must establish a "reasonable likelihood" of an alleged harm. *Rothey*, 185 A.3d at 468. Speculation and conjecture do not suffice. *Id.* (citing *Lutz v. City of Phila.*, 6 A.3d 669, 676 (Pa. Cmwlth. 2010)). The exception provides as follows:

> **(b) Exceptions.--**Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
>
> > (1) A record, the disclosure of which:
> >
> > > . . . .
> > >
> > > (ii) would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual.

65 P.S. § 67.708(b)(1)(ii).

In its first issue, SEPTA emphasizes the OOR's conclusion that releasing the video will pose a risk to the personal security of SEPTA personnel. SEPTA's Br. at 11-17. SEPTA argues, based on Chief Lawson's affidavit, that the public will also be at risk should the video be released. *Id.* Thus, it asks that we "allow for exclusion of the entirety of the video given the risk of harm to the public." *Id.* at 11. SEPTA relies on the following excerpt from Chief Lawson's affidavit:

> The train video depicts the train engineer and conductors who refused to transport a passenger with a loaded firearm. Based on my training and experience in law enforcement, there is a risk to the safety of the SEPTA personnel who responded to this incident if the video footage of the incident is provided to members of the public. The risk is that members of the public will be able to identify and find those SEPTA personnel, and harass them.

R.R. at 19a.

5

The personal security exception addresses risks of harm to, and the personal security of, "an individual," rather than the general public. 65 P.S. § 67.708(b)(1)(ii) (emphasis added). It may apply to a group of individuals "based upon evidence that establishes that the release of certain information poses a likelihood of a substantial and demonstrable risk to the personal security of that group of individuals." *Crocco v. Pa. Dep't of Health*, 214 A.3d 316 (Pa. 2019) (quoting *State Emps. Ret. Sys. v. Fultz*, 107 A.3d 860, 868 (Pa. Cmwlth. 2015)). Even so, Chief Lawson did not aver in his affidavit that releasing the video will pose a risk of harm to any members of the public present during the incident on July 8, 2022. He averred there will be a risk of harm *to SEPTA personnel should the video be released to the public*. Our review of the record does not reveal any indication, in Chief Lawson's affidavit or elsewhere, that members of the public will be at risk of harm should the video be released. Therefore, SEPTA's first issue fails.

SEPTA's second issue involves the OOR's directive that it could redact faces or identifying information of SEPTA personnel before releasing the video. SEPTA contends it lacks the ability to redact the video internally and would need to retain a third-party vendor to perform the redactions. SEPTA's Br. at 11-12, 18-19. Citing an affidavit and estimate, which it submitted for the first time as attachments to its petition for review, SEPTA contends redacting the video would cost approximately $22,200.[3] *Id.* at 19. According to SEPTA, it asked Steinheiser to prepay the cost of the redactions, but he refused. *Id.* at 19-20. SEPTA asks that we require Steinheiser to "make a credible commitment of his intent to pay for the reproduced record in a

---

[3] Specifically, SEPTA attached an affidavit from William Marchesani, the Technical Manager of its Video Surveillance Department, and an e-mail from a third party containing the estimated cost of redactions. R.R. at 156a-58a. The $22,200 estimated cost derives from the fact that Steinheiser requested 2 hours of footage involving 56 different cameras, approximately. *Id.*

redacted form prior to requiring SEPTA to expend substantial public monies to retain an outside vendor to accomplish reproduction of the video." *Id.* at 20.

Similarly, in its third issue, SEPTA suggests this Court may hold a hearing or remand the case to the OOR if we determine "that the record is not complete on the issue of the cost and feasibility of redaction." SEPTA's Br. at 20. SEPTA explains the parties did not address the question of redaction before the OOR, and, as a result, it did not obtain a cost estimate until after the OOR issued a final determination. *Id.* SEPTA adds we may also hold a hearing or remand to address Steinheiser's "intent to pay for the actual cost SEPTA will incur" to redact the video. *Id.* at 21.

SEPTA justifies its request for prepayment by citing Section 1307 of the Law. In relevant part, that section provides as follows:

> **(b) Duplication.—**
>
>> (1) Fees for duplication by photocopying, printing from electronic media or microfilm, copying onto electronic media, transmission by facsimile or other electronic means and other means of duplication shall be established:
>>
>>> (i) by the [OOR], for Commonwealth agencies and local agencies;
>>>
>>> . . . .
>>
>> (2) The fees must be reasonable and based on prevailing fees for comparable duplication services provided by local business entities.
>
> . . . .
>
> **(g) Limitations.--**Except as otherwise provided by statute, no other fees may be imposed unless the agency necessarily incurs costs for complying with the request, and such fees must be reasonable. No fee may be imposed for an agency's review of a record to determine

7

whether the record is a public record, legislative record or financial record subject to access in accordance with this act.

**(h) Prepayment.--**Prior to granting a request for access in accordance with this act, an agency may require a requester to prepay an estimate of the fees authorized under this section if the fees required to fulfill the request are expected to exceed $100.

65 P.S. § 67.1307(b)(1)-(2), (g)-(h).

SEPTA's affidavit and estimate indicate it lacks the ability to redact the video in compliance with the OOR's final determination and will necessarily incur the cost of retaining a third-party vendor to perform the redactions. If the cost of redactions is necessary and reasonable under Section 1307(g), SEPTA may require prepayment under Section 1307(h) before producing the redacted video. Nonetheless, due to the procedural posture of this case, the OOR has not had the opportunity to address the necessity and reasonableness of SEPTA's estimated cost. We believe the best course of action is to remand so that SEPTA may supplement the record and the OOR may rule on these issues in the first instance.

On remand, we encourage the parties to reach an amicable resolution of this dispute. The parties may, as SEPTA proposes, compromise on the estimated cost of redactions by reducing the amount of video Steinheiser receives. *See* SEPTA's Br. at 20. It may be possible to provide Steinheiser with a video that adequately captures the incident on July 8, 2022, without redacting what SEPTA describes as 2 hours of footage from 56 cameras. *See* R.R. at 156a-58a. SEPTA should provide additional estimates for, and Steinheiser may agree to receive, video that covers a shorter time period or captures the incident from fewer than all camera angles.[4]

---

[4] The OOR's official fee schedule provides that "[n]o additional fee may be imposed" for redacting records. Office of Open Records, *Official RTKL Fee Schedule*, https://www.openrecords.pa.gov/RTKL/FeeStructure.cfm (last visited January 4, 2023). We read **(Footnote continued on next page…)**

8

### III. Conclusion

Accordingly, we vacate the OOR's October 13, 2022 final determination and remand for consideration of the necessity and reasonableness of SEPTA's estimated cost of redactions under Section 1307(g).

_____
STACY WALLACE, Judge

---

the OOR's schedule to prohibit fees for time spent redacting records such as copied or printed documents, rather than fees for the cost of retaining a third-party vendor to redact requested videos. *See Pa. Dep't of Educ. v. Bagwell*, 131 A.3d 638, 651 (Pa. Cmwlth. 2015) (citing 65 P.S. § 67.1307(g); *State Emp. Ret. Sys. v. Off. of Open Recs.*, 10 A.3d 358 (Pa. Cmwlth. 2010)). Section 1310(a)(8) of the Law, 65 P.S. § 67.1310(a)(8), directs the OOR must "[c]onduct a biannual review of fees charged under this act." It would be beneficial for the OOR to clarify if and when redaction fees are permissible when it conducts its next biannual review.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Southeastern Pennsylvania : 
Transportation Authority, : 
                        Petitioner : 
                                   : 
            v. : No.  1255 C.D. 2022
                                   : 
Erik Steinheiser (Office of : 
Open Records), : 
                    Respondent : 

## O R D E R

**AND NOW**, this 5th day of January 2024, the Office of Open Records' (OOR) October 13, 2022 final determination is **VACATED** and the matter is **REMANDED** to the OOR consistent with this Opinion.  The OOR is directed to consider whether the Southeastern Pennsylvania Transportation Authority's estimated redaction costs are necessary and reasonable under Section 1307(g) of the Right-to-Know Law, Act of February 14, 2008, P.L. 6, 65 P.S. § 67.1307(g).  The OOR shall issue a new final determination from which an appeal may be taken within 45 days of the date of this order.

      Jurisdiction relinquished.

                                                _____

                                                STACY WALLACE, Judge